**IN THE U.S. DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| TRENT HUNTER, on behalf of himself and others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>CREED TRANSPORT, INC., DOGMA TRANSPORT, INC., N.T. SOLUTIONS, INC., BOJAN BLAZIC,<br><br>        Defendants. | Case No.: 23-cv-2694<br><br>Hon. Edmond E. Chang |

**MOTION FOR A DEFAULT JUDGMENT IN SUM CERTAIN AGAINST**
**DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff, Trent Hunter, through his attorneys, Wilkowski Law, LLC and the Garfinkel Group, LLC, hereby moves this Honorable Court for Default Judgment in Sum Certain against Defendants Creed Transport, Inc., Dogma Transport, Inc., N.T. Solutions, Inc., and Bojan Blazic (collectively, "Defendants"), and in support thereof states:

## I.    PRELIMINARY STATEMENT

Plaintiff has demonstrated (1) his entitlement to a default judgment against Defendants, in addition to (2) his damages due by the Defendants, in a sum certain. This Motion is supported by the affidavit of Plaintiff Trent Hunter, dated February 26, 2024. The procedural history of this matter is set forth in the Affidavit of Gregory Wilkowski, Esq., dated February 26, 2024.

## II.    FACTUAL SUMMARY

Factual matters are drawn from Plaintiff's First Amended Complaint ("F.A.C.") in this action (*see* **Exhibit A**), as well as Plaintiff's Affidavit submitted in support of this motion. Plaintiff is an over-the-road truck driver with over seven years of experience in the transportation industry, and former

employee of the Defendants. Ex. A (F.A.C.) at ¶¶ 6-8. He has a CDL Class A license and worked for Defendants, under their direction and control, from April 2020 to November 2022, as an owner-operator/lessor, using a truck to transport loads in interstate commerce. *Id.* Defendants executed an Independent Contractor Agreement with Hunter to lease his equipment ("Lease Agreement") and pay him 88% of the gross price (or "rate") of each load he transported for Defendants. *Id.* at ¶ 1.

Defendants schemed to defraud Plaintiff and steal part of his compensation. *Id.* at ¶¶ 1-5. They altered the third-party brokers' load confirmation documents to reduce the actual rate of each load, shared only the altered versions of the load confirmation documents with Plaintiff, and then paid Plaintiff only 88% of the fraudulently reduced load price. *Id.* In doing so, Defendants breached the Lease Agreement with Plaintiff, violated the ICFA and IWPCA, violated Plaintiff's rights under the TILA, and committed common law fraud. *Id.* at ¶¶ 88-141.

From more than two years, up to December 1, 2022, Plaintiff transported at least 183 loads for Defendants. Aff. of T. Hunter at ¶ 2.

### III. <u>LEGAL STANDARD</u>

Rule 55 of the Federal Rules of Civil Procedure ("FRCP") states, in pertinent part:

> (1) *By the Clerk*. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

Fed. Rules Civ. Proc. R. 55(b)(1).

Upon entry of default, all well-pleaded allegations of a complaint, other than those relating to damages, are taken as true. *E360 Insight v The Spamhaus Project*, 500 F. F.3d 594, 602 (7th Cir. 2007).

### IV. <u>LEGAL ARGUMENT</u>

Plaintiff is entitled to default judgment on all his five claims: (1) breach of contract; (2) Truth in Leasing Act ("TILA"); (3) Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq.

("IWPCA"); (4) Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); and (5) common law fraud.

### A. Breach of Contract.

The elements of breach of contract are: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach by the defendant; and (4) resultant damages." *Spitz v. Proven Winners N. Am., Ltd. Liab. Co.*, 969 F. Supp. 2d 994, 1005 (N.D. Ill. 2013) (internal citations omitted).

Here, Defendants contracted with Plaintiff through the Lease Agreement, under which Plaintiff was to receive 88%, and Defendants 12%, of the freight rate that brokers or shippers paid Defendants for the drivers' transportation services, the "gross receipts of each load …" Ex. A at ¶¶ 90-97; Ex. H to F.A.C. Plaintiff substantially performed all his obligations under his Lease Agreement. Ex. A at ¶¶ 90-97.

As alleged in Plaintiff's Complaint, Defendants breached the Lease Agreement by not paying Plaintiff based on the real price that Defendants' customers actually paid to Defendants, but instead secretly altering the load confirmation sheets to make it appear that the load prices were lower than they actually were, and paying Plaintiff 88% of the lesser amount. *Id.* Plaintiff has been damaged by receiving only this lesser amount and not 88% of the true gross receipt of each load. *Id.*

Therefore, Plaintiff requests entry of default judgment with respect to his claim for breach of contract.

### B. Truth in Leasing Act.

Under TILA, an authorized carrier may perform authorized transportation in leased equipment only if the written lease granting the use of the equipment meets the requirements of 49 C.F.R. § 376.12. The lease provisions must be "adhered to and performed by the authorized carrier." *Id.* § 376.12 (introductory paragraph). If a drivers' compensation is based on a percentage of the price

of the load, then carriers must provide the driver with copies of the original brokers' load confirmation sheets at or before the time of settlement. *Id.* § 376.12(g).

As alleged in the F.A.C., Defendants Creed, Dogma, and N.T. Solutions are each a motor carrier licensed with the U.S. Department of Transportation. Ex. A at ¶ 99. Plaintiff worked for Defendants as an owner-operator for purposes of TILA. *Id.* Pursuant to the TILA regulations, Defendants signed equipment leases with Plaintiff. *Id.* at ¶ 100.

The Lease Agreement required Defendants to pay Plaintiff 88% of gross revenue for each load he hauled for them. *Id.* at ¶ 103. Defendants falsely represented the actual prices of the loads in order to pay Plaintiff less than the amount promised and failed to provide Plaintiff with copies of the original, unaltered brokers' load confirmations. *Id.* at ¶¶ 104-106.

Plaintiff relied on the falsified load confirmations to his detriment as he would not have agreed to haul loads for Defendants if he knew the shippers were paying Defendants more to transport the load than Defendants represented to him. *Id.* at ¶ 107. He has been damaged by Defendants' alterations of load confirmation sheets, including by failing to be compensated with 88% of the true, gross amounts of the load paid by the shipper. *Id.*

Therefore, under 49 U.S.C. §14704(a)(2), Defendants are liable to Plaintiff for damages on account of Defendants' regulatory violations.

### C.  Illinois Wage Payment and Collection Act.

The IWPCA mandates that employers must pay employees wages or final compensation pursuant to any employment contract or agreement between the parties. 820 ILCS 115/2. Deductions by employers from wages or final compensation are prohibited unless they are: (1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; [or] (4) made with the express written consent of the employee, given freely at the time the deduction is made. 820 ILCS 115/9.

4

As alleged, Plaintiff was Creed's, Dogma's, and N.T. Solutions' employee and Creed, Dogma, and N.T. Solutions were Plaintiff's employer for purposes of the IWPCA. Ex. A at ¶ 111. For instance, (1) Plaintiff operated semitrucks under Defendants' direction and control and was unable to negotiate his own loads by contacting brokers on the "load boards," among other things (*id.* at ¶¶ 68-69); (2) Defendants required Plaintiff to follow many company rules, enforced with monetary penalties payable to Defendant Creed (*id.* at ¶¶ 68-69; Ex. H to F.A.C.); and (3) Defendants constantly monitored Plaintiff's whereabouts during working hours and tracked his locations using GPS and electronic logging devices, which Defendants owned, and which Defendants required Plaintiff to keep in his truck. *Id.* at ¶ 74.

As alleged, Defendant Blazic was a "decision maker" as he either approved or was aware of the illegal withholdings and therefore is individually liable under the IWPCA. Ex. A at ¶ 82. Blazic knew that Plaintiff was entitled to the full amount of his agreed to and earned wages, yet knowingly permitted or ensured that Plaintiff was not paid all of his agreed and earned wages. *Id.* at ¶¶ 82-84.

As further alleged, Defendants deducted from Plaintiff's wages through the alteration of rate confirmations without Plaintiff's written authorization. *Id.* at ¶ 117. Defendants knew Plaintiff had earned his agreed to rate and took part in the decision to refuse to pay the entirety of his earned rates. *Id.* at ¶ 118.

By refusing to pay Plaintiff his earned wages/rate, Defendant Blazic also knowingly permitted Creed, Dogma, and N.T. Solutions to violate the IWPCA, denying Plaintiff final compensation to which he is lawfully entitled and pursuant to his agreement with Defendants. *Id.* at ¶ 120. Plaintiff was damaged in the form of being denied all lawfully earned wages. *Id.* at ¶ 120.

Therefore, Plaintiff requests entry of default judgment with respect to his claim for violation of the IWPCA.

### D. Illinois Consumer Fraud and Deceptive Business Practices Act.

815 ILCS §§ 505/2 prohibits:

use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', […] in the conduct of any trade or commerce[.]

As alleged, Defendants deceived Plaintiff by: (1) offering him a load for the price of a 12% dispatch and accounting fee and then secretly retaining more than 12% of the load; (2) lying and under-reporting the gross revenues Defendants received for loads hauled by Plaintiff; and (3) sending him altered load confirmation sheets from third party freight brokers. Ex. A at ¶¶ 123-124. Defendants' deceptive business practices happened in the course of trade or commerce. *Id.* at ¶ 129.

As further alleged, Defendants intended that Plaintiff rely on their reports of the gross revenues so that they could pay Plaintiff less than the amounts he was owed pursuant to his equipment lease. *Id.* at ¶ 125. Plaintiff relied on these misrepresentations by accepting loads that he otherwise would not have and was damaged by failing to receive 88% of the true amounts owed to him. *Id.* at ¶¶ 125, 130.

Defendants engaged in deceptive and unfair practices in the conduct of their business, in violation of 815 ILCS §§ 505/2, 510/2(a), by engaging in the aforementioned acts and practices. Defendants' unfair business practices also violated established public policy, including the TILA.

Therefore, Plaintiff requests entry of default judgment with respect to his claim for violation of the ICFA.

### E. Common Law Fraud.

The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge of falsity; (3) defendant's intent to induce the plaintiff to act; (4) plaintiff's reasonable reliance; and (5) damages. *Twin Master Fund, Ltd. v. Akorn, Inc.*, No. 19 C 3648, 2020 U.S. Dist. LEXIS

18727, at *13 n.4 (N.D. Ill. Feb. 5, 2020).

Defendants falsely represented to Plaintiff the load prices that Defendants' customers paid Defendants by altering load confirmation sheets to make the prices appear lower than those paid to Defendants. Ex. A at ¶¶ 133-134. Defendants then knowingly sent the fraudulent load confirmation sheets, virtually identical in appearance to the brokers' original load confirmations, to Plaintiff to make him believe that Defendant was paying them in accordance with his Lease Agreement. *Id.* at ¶¶ 135-136. Plaintiff reasonably relied on the false load confirmation sheets as though they were authentic. *Id.* at ¶¶ 137-139. Plaintiff incurred damages in the form of underpayments for his services because of Defendants' fraud. *Id.* at ¶ 140.

Therefore, Plaintiff requests entry of default judgment with respect to his claim for common law fraud.

## V. DETERMINATION OF DAMAGES OWED TO PLAINTIFF

"While the law does not require precision in damages estimates, it requires a reasonable basis for estimating [damages]." *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 648 n.8 (7th Cir. 2011). However, "the plaintiff has a more relaxed burden of proof than on the issue of causation, especially if as in this case the defendants' conduct has made it difficult for the plaintiff to prove the precise extent of his damages." *BCS Servs. v. Heartwood 88, LLC, 637 F.3d 750*, 759 (7th Cir. 2011) (internal citations omitted); *see also J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566-67 (1981) ("it does not 'come with very good grace' for the wrongdoer to insist upon specific and certain proof of the injury which it has itself inflicted."); *Glob. Material Techs., Inc. v. Dahzeng Metal Fibre Co.*, No. 12 CV 1851, 2018 U.S. Dist. LEXIS 233195, at *3-4 (N.D. Ill. Mar. 28, 2018) (citing *BCS Servs.*, 637 F.3d at 759 ("'[B]road latitude' is given to quantify damages in [default] cases like this one, where defendants' conduct impeded the damages calculation."). "Additionally, in such scenarios, all reasonable doubts about the amount of damages are resolved in the plaintiff's favor." *Id.* (citing *Haslund v. Simon Prop.*

7

*Grp., Inc.*, 378 F.3d 653, 658 (7th Cir. 2004)); *see also BE&K Constr. Co. v. Will & Grundy Ctys. Bldg. Trades Council*, 156 F.3d 756, 770 (7th Cir. 1998) ("And where, as here, the uncertainty as to the damages stems from the defendants' illegal conduct, the defendants should not benefit from the uncertainty they created[.]"); *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1365 (7th Cir. 1996) ("speculation has its place in estimating damages, and doubts should be resolved against the wrongdoer.").

As explained herein, Plaintiff is owed substantial damages by Defendants for their theft of his compensation. This amount can be reasonably determined based on the affidavit of Trent Hunter and documentary evidence.

### A. Defendants Altered Rate Confirmations to Appear $100 to $200 Less Than the True Amount.

Here, the evidence in the record and Plaintiff's Affidavit provides the reasonable basis for a measure of Plaintiff's damages, even if the precise amounts of which Defendants defrauded Plaintiff are within the possession of Defendants, none of whom have appeared in this case.

The affidavit of Trent Hunter details 183 loads he transported for Defendants over a two-and-a-half year period. Hunter Aff. at ¶ 2. It further explains that for several of these loads, Hunter was able to determine that he had been defrauded of 88% of either $100 or $200 per load. *Id.* at ¶¶ 4-8. For instance, on August 11, 2022, Hunter received a load confirmation between Creed and broker C.H. Robinson by email from Defendants' dispatcher stating that the price of the load was $1,400. *Id.* at ¶ 4; Ex. I to F.A.C. Later, in September 2022, Hunter received a copy of the unaltered load confirmation directly from C.H. Robinson. Hunter Aff. at ¶ 7; Ex. J to F.A.C. This unaltered load confirmation stated that the load price was not $1,400, but actually $1,600—a difference of $200. *Id.* On October 12, 2022, Plaintiff received another load confirmation by email from Defendants' dispatcher, and it falsely gave a load price of $1,300. Hunter Aff. at ¶ 6; Ex. K to F.A.C. Yet later, Plaintiff obtained via email directly from the broker the unaltered load confirmation, which showed

that the price was actually $1,400—a difference of $100. Hunter Aff. at ¶ 7; Ex. L to F.A.C. Plaintiff Hunter also called C.H. Robinson and confirmed that he was shorted similar amounts on other loads that he transported for Defendants. Hunter Aff. at ¶ 8.

Defendants deducted at least $100 to $200 from Plaintiff's load confirmation rates. Hunter Aff. at ¶¶ 4-7, 11. Plaintiff is entitled to 88% of the $100 to $200 that Defendants illegally deducted under his Lease Agreement. Ex. H to F.A.C. Applying a measure of damages of 88% of the average of $100 and $200, to each of Plaintiff's loads is thus a reasonable basis to measure damages. Even though some amount of speculation may be permitted (*Mid-America Tablewares, Inc.*, 100 F.3d at 1365), that Defendants deducted between $100 to $200 on load confirmations is not in dispute. Though it is less clear whether Defendants discounted every one of Hunter's 183 load payments, or if they deducted some number less than 183, that doubt should be resolved in Hunter's favor. *Glob. Material Techs., Inc.*, 2018 U.S. Dist. LEXIS 233195, at *3-4 ("[I]n such scenarios, all reasonable doubts about the amount of damages are resolved in the plaintiff's favor."); *BE&K Constr. Co.*, 156 F.3d at 770 ("And where, as here, the uncertainty as to the damages stems from the defendants' illegal conduct, the defendants should not benefit from the uncertainty they created[.]"); *Mid-America Tablewares, Inc.*, 100 F.3d at 1365 ("doubts should be resolved against the wrongdoer.").

Defendants, moreover, actively impeded the efforts of Hunter to ascertain the amounts they took from him. Hunter Aff. at ¶¶ 9-10. When confronted with evidence that Hunter had been defrauded, Defendants ignored Hunter, lied to him, and even blocked his phone calls. *Id.* Defendants should not receive the benefit of any reasonable doubt as to the prevalence or consistency of their fraud, especially "where defendants' conduct impeded the damages calculation." *Glob. Material Techs., Inc.*, 2018 U.S. Dist. LEXIS 233195, at *3-4.

Hunter is owed 88% of the average of $100 and $200 for each of the 183 loads he carried for Defendants, or $24,420. *See* Hunter Aff. at ¶ 11.

### B. Plaintiff is entitled to Punitive Damages

Defendants conduct in stealing from Plaintiff amounts owed to him under the Lease Agreement, obstruction of Plaintiff's investigation into the amounts owed, and refusal to provide accurate payment amounts was fraudulent, egregious, willful, and malicious. Ex. A at ¶ 141; Hunter Aff. at ¶ 9. An award of punitive damages is justified and appropriate here.

Punitive damages may be awarded where Defendants' conduct was fraudulent, intentional, or willful and wanton, and where justice and the public good require it. *See* Illinois Pattern Jury Instruction 35.01 (Punitive/Exemplary Damages—Willful and Wanton Conduct). Common factors a jury may take into account include the reprehensibility of Defendants' conduct, the actual and potential harm caused to Plaintiff, and the amount of money necessary to punish Defendants and discourage them and others from future wrongful conduct. *Id.* The amount of punitive damages must be reasonable and in proportion to the actual and potential harm suffered by Plaintiff. *Id.*

Here, a multiplier of three is appropriate to punish Defendants for their fraudulent and willful conduct in stealing from the amounts owed to Plaintiff, or $73,260. *See State Farm and BMW of North America v. Gore*, 517 U.S. 559 (1996) (single digit multipliers are appropriate); *accord Mathias v. Accor Economy Lodging*, 347 F.3d 672 (7th Cir. 2003). This sum is not so excessive as to be unreasonable, as it is a single digit multiplier on the low end, yet sufficient enough to punish and deter future trucking company Defendants from engaging in similar conduct with respect to Plaintiffs who transport loads for them and rely on them to transmit accurate and honest load confirmations.

### C. Attorneys' Fees and Costs

Plaintiff is entitled to his attorneys' fees under the TILA, ICFA, and IWPCA. Each statute separately allows for the recovery of reasonable attorneys' fees. *See* TILA, 49 U.S.C. §14704(e) ("The district court shall award a reasonable attorney's fee under this section."); ICFA, 815 Ill. Comp. Stat. Ann. 505/10a; IWPCA, 705 ILCS 225/1.

Should the Court enter a default judgment against Defendants, Plaintiff will file a fee petition and bill of costs pursuant to the time designated by Local Rule 54.1 (Taxation of Costs) and Local Rule 54.3 (Attorney's Fees and Related Non-taxable Expenses).

## VI.    **<u>CONCLUSION</u>**

Plaintiff respectfully submits that he has satisfied his burden of having established: (i) a valid basis for his claims for damages; and (ii) amount of his damages to a sum certain obviating the need the Court to schedule a hearing to determine the sum of damages. Accordingly, Plaintiff respectfully requests that the Court grant Plaintiff's Motion, and order that a default judgment in sum certain be entered against the Defendants, without the need for a hearing on damages.

Date: February 26, 2024.                              Respectfully submitted,

<u>/s/ Gregory A. Wilkowski</u>
Attorney for the Plaintiff
Gregory A. Wilkowski
Wilkowski Law LLC
161 N. Clark St., Ste. 1700
Chicago, IL 60601
(773) 828-6225
greg@wilkowskilaw.com